TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
Assistant United States Attorney
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5748
    Facsimile: (213) 894-1441
    E-mail:    amanda.elbogen@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-777-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT YAONING SUN |
| v. | Hearing Date: February 9, 2026 |
| YAONING SUN, a/k/a "Mike Sun," a/k/a "Yuening Sun," | Hearing Time: 10:30 A.M. Location:    Courtroom of the Hon. R. Gary Klausner |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Amanda B. Elbogen, hereby files its Sentencing Position for defendant Yaoning Sun.

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 27, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
Acting United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division


_____/s/_____
AMANDA B. ELBOGEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

For years, defendant Yaoning "Mike" Sun knowingly operated as a covert agent of the People's Republic of China ("PRC") in the United States.  Defendant drafted reports to submit to high-level PRC government officials detailing his work on their behalf, which included, among other things, countering the Falun Gong minority (a persecuted group in China) and pro-Taiwanese independence forces and helping to elect a like-minded individual ("Individual 1") to political office in Southern California.  Defendant also conducted surveillance of the then-President of Taiwan during her April 2023 visit to the United States, and published pro-PRC propaganda via a purported "news" website targeting the local Chinese-American population, all at the direction of PRC Consulate officials.

On October 27, 2025, defendant pled guilty to Count Two of the indictment, admitting he acted as an Illegal Agent of a Foreign Government in violation of 18 U.S.C. § 951. (Dkt. 28.)  For the reasons set forth below, the government submits that a sentence of 60 months' imprisonment, followed by a three-year term of supervised release, is appropriate to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.    OFFENSE CONDUCT**

Beginning in at least 2022, and continuing through at least January 2024, defendant knowingly acted within the Central District of California as an agent of the PRC without prior notification to the Attorney General of the United States.

**A.    Collaboration with Co-Conspirator John Chen**

As an agent for the PRC, defendant worked covertly in the United States with his primary co-conspirator John Chen, a/k/a "Chen Jun." Chen was a high-level member of the PRC intelligence apparatus, who regularly attended elite CCP functions, including military parades. He met personally with PRC President Xi Jinping (pictured below),[1] and bragged that he had "climbed, climbed, climbed to this position" and that "Uncle Xi [Jinping] met me three times in ten years."[2]



In a YouTube video posted on September 15, 2019,[3] Chen can be seen with a megaphone at a pro-Taiwan protest in Los Angeles threatening protesters, saying: "If you have a Chinese passport, and I take your photo now, you will be arrested when you return to China.

---

[1] The metadata from this photo indicates that it was likely taken on May 28, 2021.

[2] See United States v. Chen, 7:23-cr-00286-NSR (S.D.N.Y.), Dkt. 53 at 13.

[3] The video was reposted to Twitter and can be viewed at https://twitter.com/jenniferzeng97/status/1662264915975872513 (last visited on September 22, 2023 at 5:28 a.m.).

If you hold a U.S. passport, you won't be able to obtain a Chinese visa."

 

(Dkt. 1.) Chen pled guilty in the Southern District of New York to acting as an illegal agent of the PRC, in violation of 18 U.S.C. § 951, and conspiring to bribe a public official, in violation of 18 U.S.C. § 371, in a separate scheme to persecute the Falun Gong minority in the United States.[4]

Per his own report, and other communications between Chen and PRC officials, defendant served as Chen's right-hand man in the United States for decades.  In one report to PRC officials, which he drafted in collaboration with Chen, defendant summarized his personal experience, including his past service in the People's Liberation Army, and stated that he had worked in the United States "[s]ince 1996" to "persist in resisting any hostile forces that undermine the friendship of US-China relations, and Chinese secessionist forces," i.e., Falun Gong and pro-Taiwanese independence forces, and

[4]  See United States v. Chen, 7:23-cr-00286-NSR (S.D.N.Y.). In summary, Chen pled guilty to conspiring in the United States at the direction of the PRC to further the PRC's campaign against practitioners of Falun Gong, a spiritual practice banned in the PRC. Specifically, Chen and another associate paid cash bribes on behalf of the PRC to a purported Internal Revenue Service agent (who was in fact an undercover law enforcement agent), to file a defective whistleblower complaint as part of a PRC Government-directed scheme to revoke the tax-exempt status of a 501(c)(3) organization run by Falun Gong practitioners. Falun Gong is a spiritual practice and persecuted minority in China.

"orchestrated and organized my team to win the election for city council" of Individual 1, whom defendant described as a "new political star."  (PSR ¶ 25.)  This effort was apiece with Chen's communications with PRC officials concerning their ongoing campaign to assert their influence on politicians in Southern California. (See Dkt. 1 at 9-12.)

Defendant's report described various issues, including that "[f]or a long time, overseas anti-China forces have been ceaseless, Taiwan independence, Tibet independence, Xinjiang independence, and Falungong have been active for a long time. . . . infiltrating and active in various mainstream fields."  The report defendant drafted proposed "using part of our Los Angeles organization's professional core team," to seek to counteract those forces. To that end, defendant's report requested $80,000 from the PRC government to fund a pro-PRC demonstration at a Fourth of July parade in Washington, D.C.  (PSR ¶ 26.)

Defendant planned and took multiple trips to China to meet with PRC officials, and brought Individual 1 with him to meet "the leader" there.  (Dkt. 1 at 21-22.)

**B.    Surveillance of the Taiwanese President During Her April 2023 Visit to the United States**

Throughout 2023 and 2024, defendant communicated with an official at the PRC Consulate in Los Angeles ("PRC Consular Official 1") regarding activities in Southern California related to Taiwan. In April 2023, President Tsai Ing-Wen of Taiwan visited Southern California.  Defendant sent real-time updates on President Tsai's movements to a PRC Consular Official.  Afterward, defendant sought approval from that PRC Consular Official to publish an article about

4

President Tsai's visit on the website he operated with Individual 1, a purported news site targeting the local Chinese-American population.  Defendant also took photographs of individuals protesting in support of and opposition to President Tsai and sent those photographs to the PRC Consular Official. (PSR ¶ 27.)

        **C.**     **Pro-PRC Propaganda Activities and Election of Individual 1**

Defendant received and executed directives from PRC government officials, and sometimes sought approval from PRC government officials, to post pro-PRC content to his "news" website, which he operated with Individual 1.  Throughout 2022, defendant also worked as the campaign advisor for Individual 1, who was running for City Council in a Southern California city.  Individual 1 was elected to the City Council in November 2022.  As noted above, defendant bragged about this accomplishment to the PRC officials he reported to.  In 2023, defendant brought Individual 1 to China to meet with PRC officials there.  (Dkt. 1 at 21-23.)

Before engaging in any of this conduct, defendant did not notify the Attorney General that he was acting in the United States as an agent of the PRC.  (PSR ¶ 28.)

**III. GUIDELINES CALCULATIONS**

In the PSR, the U.S. Probation Office ("Probation") submitted the following Sentencing Guidelines calculations:

| Base Offense Level | 37 | U.S.S.G. §§ 2x5.1, 2M3.1 |
|---|---|---|
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| Zero-Point Offender | -2 | U.S.S.G. § 4C1.1 |

(PSR ¶¶ 36-47.)   Because 18 U.S.C. § 951 has no corresponding sentencing guideline, Probation analogized to the offense guideline for transmitting national defense information to aid a foreign

5

government, U.S.S.G. § 2M3.1, resulting in a base offense level of 37.  (PSR ¶ 36.)  Probation determined that the defendant has no criminal history points, which puts him in criminal history category I, and that he qualifies for the zero-point offender reduction (PSR ¶ 45.)

With a total Guidelines Offense Level of 32 and a Criminal History Category of I, Probation found that the Guideline range for defendant's term of imprisonment was 121 to 151 months, noting, however, that the statutory maximum falls just below that range, at 120 months' imprisonment, resulting in a guideline term of 120 months' imprisonment.  (Id. ¶ 99.)

**IV.    GOVERNMENT'S RECOMMENDATION**

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a), which are: to reflect the seriousness of the offense, to promote respect for the rule of law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from future crimes of the defendant, and the defendant's history and characteristics, among other considerations.  18 U.S.C. § 3553(a)(2).  The parties agree that the U.S. Sentencing Guidelines do not contain a sufficiently analogous offense guideline under U.S.S.G. § 2X5.1, and thus the provisions of 18 U.S.C. § 3553 should control.  (Dkt 26. at 8.)

The government submits that a 60-month sentence is appropriate to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

a. Seriousness of the Offense and the Need for Deterrence

Defendant worked covertly in the United States on behalf of the PRC to (1) surveil Taiwanese leaders, (2) repress minority groups in

6

the United States such as the Falun Gong, pro-Taiwan groups, and pro-Tibet groups, (3) promote pro-PRC propaganda through a purported "news" website targeting the local Chinese-American population, and (4) undermine our democratic system of government by helping to elect someone from his "team" to public office as part of a PRC malign foreign influence campaign.

The PRC's government's "five poisons" – what the CCP views as the primary threats to its continued autocratic rule over China – include the Falun Gong minority, supporters of Taiwanese independence, supporters of Tibetan independence, supporters of Uyghur independence, and the Chinese pro-democracy movement.  A foreign interference commission established by the Canadian government found these five groups are the primary targets of transnational repression by the PRC government, including outside of China.[5]  The 2025 Annual Threat Assessment of the U.S. Intelligence Community[6] lists China as a primary state actor engaging in behavior that directly threatens U.S. national security, including through its "coercive and subversive malign influence activities to weaken the United States internally and globally." Id. at 15.  Through these activities, the PRC "seeks to suppress critical views and critics of China within the United States and worldwide," often by conducting "covert influence operations [to] disseminate disinformation."  Id.

---

[5] See Public Inquiry into Foreign Interference in Federal Electoral Processes and Democratic Institutions: Initial Report, at 91 (May 3, 2024), available at https://foreigninterferencecommission.ca/fileadmin/user_upload/Foreign_Interference_Commission_-_Initial_Report__May_2024__-_Digital.pdf (last visited January 27, 2026).

[6] See 2025 Annual Threat Assessment of the U.S. Intelligence Community, available at https://www.dni.gov/files/ODNI/documents/assessments/ATA-2025-Unclassified-Report.pdf (last visited January 27, 2026),

at 15-16.

Detecting, disrupting, and prosecuting malign foreign influence and transnational repression campaigns orchestrated by a foreign regime with access to funding, infrastructure, and intelligence resources, is extraordinarily difficult.  And deterring conduct that is committed for ideological, political, and geopolitical motives is even more so.  Accordingly, in order to properly reflect the seriousness of the offense and to deter others who would similarly act as an unregistered agent of a foreign power in the United States, a substantial sentence is necessary.  See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed is required "to afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence).

A three-year term of supervised release would provide an "added measure of deterrence and protection," that is warranted under the facts of this case. See USSG § 5D1.1, comment. (n.5).  Supervision would allow the Court to ensure that defendant does not revert to crime upon his release from custody.

b.    Defendant's History and Characteristics

The history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), also support a sentence of 60 months' imprisonment.  The defendant has no mitigating motives or external factors: he did not suffer from a troubled upbringing, and was not acting under duress or improper pressure from the PRC government.  He was raised by parents he describes as hardworking and honest people who prioritized education and "who always taught their children to do the right thing and to follow the rules." (PSR ¶¶ 60-61.)  He studied at the Nanjing Conservatory of Music, the Shanghai Theatre Academy, and the Open

8

University of China.  (PSR ¶¶ 80-82.)  He joined the Chinese military when he was 22 years old (PSR ¶ 61), and enjoyed a stable middle-class life in the United States, where he raised two children with his ex-wife.  (PSR ¶¶ 62-70.)

c. Sentences in Similar Cases

Analogous cases from across the country support the government's position that a substantial sentence is warranted here.  In United States v. Alvarez, 05-cr-20943-KMM (S.D. Fla.), defendant Carlos Alvarez transmitted multiple reports to Cuban intelligence officials summarizing information he had gathered in the United States on their behalf.  There, the defendant pled guilty to conspiracy to act as an unregistered agent of the government of Cuba and was sentenced to a term of imprisonment of 60 months.

In United States v. Duran, 07 Cr. 20999-JAL (S.D. Fla.), the defendant came to the United States as an agent of the Venezuelan government in an attempt to bribe and/or extort a U.S. citizen. See also United States v. Duran, 596 F.3d 1283, 1295-96 (11th Cir. 2010). The defendant was convicted following a trial of acting and conspiring to act as an unregistered agent of the government of Venezuela, and sentenced to a term of imprisonment of 48 months.

In United States v. Buryakov, 15-cr-73-RMB (S.D.N.Y.), the defendant conducted research for the Russian Federation, attempted to gather non-public U.S. government documents on economic matters, and attempted to help the Russian Federation influence economic issues in the United States and Canada. Buryakov, Dkt. 152 at 2-4.  The defendant pled guilty to acting as an unregistered foreign agent of the government of the Russian Federation and was sentenced to a term of imprisonment of 30 months.  There, the parties had stipulated in

9

the plea agreement that a sentence of 30 months' imprisonment was appropriate, and the sentencing court imposed that sentence. Id. at 1; Buryakov, Dkt. 157.

Though defendant's co-conspirator, Chen, was sentenced to 20 months' imprisonment in the Southern District of New York, the charges in that case stemmed from completely distinct conduct, centering around a bribery scheme. There, the Court applied the Sentencing Guideline tied to another charge Chen pled to, bribery of a public official in violation of 18 U.S.C. § 201(b).

A sentence of 60 months' imprisonment, like the one imposed in Alvarez, is warranted here. Defendant did not cooperate or attempt to cooperate, and his conduct was not limited to passive surveillance or reporting (though he did both). He and his co-conspirator Chen engaged in sustained efforts to assist the PRC in its campaign of transnational repression and foreign malign influence in the United States, extending the PRC's reach in its persecution of the Falun Gong and those advocating for Taiwanese independence. He also served a pivotal role in the PRC's efforts to "influence" U.S. politicians in their favor at all levels of government. In this regard, defendant not only traveled regularly to China to meet with PRC officials, but also brought his "new political star" from Southern California to China to meet with them as well. Defendant's actions spreading pro-PRC propaganda through a purported news website and providing real-time reports on the whereabouts of the Taiwanese president and those who came out to support her, were all taken at the direction of PRC officials. The seriousness of his conduct merits the requested sentence of 60 months' imprisonment.

## V.    CONCLUSION

For the foregoing reasons, the government respectfully recommends that defendant be sentenced to 60 months' imprisonment, followed by a three-year term of supervised release.